UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

MELVIN GREEN,

Defendant.

Criminal Action No. 23-292-7 (CKK)

**MEMORANDUM OPINION**
(December 14, 2023)

Defendant Melvin Green is charged by indictment with accessory after the fact regarding an armed carjacking and kidnapping of two victims ("Victim-1" and "Victim-2," collectively, the "Victims") on June 9, 2023. On August 31, 2023, Magistrate Judge Zia M. Faruqui of this jurisdiction ordered Defendant to be temporarily detained without bond. On November 9, 2023, Magistrate Judge Faruqui held a detention hearing for Defendant and granted the Government's oral motion to detain Defendant pending trial.

Before the Court is Defendant's [54] Motion for Bond Review. Defendant requests that the Court review his bond status and set conditions of release. Upon consideration of the pleadings,[1] the relevant legal authority, and the record before the Court, the Court shall **DENY** Defendant's [54] Motion for Bond Review.

**I.   BACKGROUND**

**A.  Procedural Background**

On August 25, 2023, the Government filed an indictment against Defendants Desmond

---

[1] The Court's consideration has focused on:
  - Defendant's Motion for Bond Review, ECF No. 54 ("Motion" or "Mot."); and
  - The Government's Opposition to Defendant's Motion for Review of Detention Order, ECF No. 56 ("Gov't's Opp'n") and exhibits therein.

Evans, Ramel Henderson, Kevon Jackson, Delonte Mundaray, Marquette Jackson, Malik Terrell, and Melvin Green. ECF No. 1 (sealed).  The indictment charged six of these defendants with Count One, Kidnapping and Aiding and Abetting, in violation of 18 U.S.C. §§ 1201(a)(1) and 2 (for kidnapping Victim-1); Count Two, Kidnapping and Aiding and Abetting, in violation of 18 U.S.C. §§ 1201(a)(1) and 2 (for kidnapping Victim-2); and Count Three, Carjacking and Aiding and Abetting, in violation of 18 U.S.C. §§ 2119(1) and (2) (for carjacking a vehicle used by Victim-1). *See id.*  With respect to Defendant Green, the indictment charged him with Count Four, Accessory After the Fact, in violation of 18 U.S.C. § 3 (for assisting Defendant Mundaray).  *See id.*  On November 3, 2023, an additional defendant was indicted, and additional firearm-related charges were included for certain defendants.  ECF No. 43 (sealed).  For Defendant Green, the superseding indictment charged him with Count Nine, Accessory After the Fact, in violation of 18 U.S.C. § 3 (for assisting Defendant Mundaray).  *See id.*  Following the August 2023 indictment, Magistrate Judge G. Michael Harvey of this jurisdiction issued an arrest warrant for Defendant, which was executed on August 31, 2023.  ECF No. 10.  That same day, Defendant appeared before Magistrate Judge Faruqui, who granted the Government's oral motion for temporary detention and held Defendant without bond.  *See* Aug. 31, 2023 Minute Entry.  Following a series of continuances, Defendant appeared for a detention hearing before Magistrate Judge Faruqui on November 9, 2023, who granted the Government's oral motion to detain Defendant pending trial.  *See* Nov. 9, 2023 Minute Entry.

Defendant subsequently filed the pending motion on November 16, 2023, requesting this Court to review his bond status and set conditions of release.  *See generally* Mot.  The Government opposes Defendant's motion, filing its opposition on December 2, 2023.  *See generally* Gov't's Opp'n.

2

**B. Factual Allegations**

In its opposition, the Government details the allegations against Defendant, appending images extracted from video surveillance footage that depict Defendant before and during the charged offenses in the indictment, as well as information and images related to the evidence recovered during searches conducted by law enforcement in August 2023. *See generally id.* Broadly, the Government alleges that Defendant served as a "lookout" while his co-defendants entered and stole items from Victim-1's vehicle, *id.* at 14, dealt with a potential witness to the crimes, *id.* at 17, and further obtained a firearm from Defendant Mundaray while the Victims were actively being kidnapped by Defendant's associates, *id.* at 18.

To support its claims, the Government recounts the video surveillance footage that purportedly depicts the defendants' conduct before, during, and after the offenses. According to the Government, this footage shows the Victims arriving in a black Mercedes SUV in the 4400 block of F Street SE, Washington, D.C., at approximately 11:33 p.m. on June 8, 2023. *Id.* at 11. At approximately 11:44 p.m., a large group of individuals, including the Victims, departed from the area in multiple vehicles. *Id.* On June 9, 2023, at approximately 12:09 a.m., video footage shows the Victims and many of the defendants in this case, including Defendant Green, enter Saint Yves, a club located at 1220 Connecticut Avenue NW, Washington, D.C. *Id.* Saint Yves is approximately eight (8) miles from the 4400 block of F Street SE. *Id.* Then, at approximately 1:56 a.m., a group of individuals, including the Victims and multiple "subjects," exit Saint Yves before entering various vehicles and departing at approximately 1:59 a.m. *Id.*

The Government appends still images extracted from video surveillance footage to corroborate its claims. The first depicts Defendant right outside Saint Yves at approximately 12:10 a.m. on June 9, 2023. *Id.* at 12. The second depicts Defendant at the 4400 block of F Street SE,

3

at approximately 3:01 a.m. that same night.  *Id.*

 

Saint Yves Outdoor Camera
June 9, 2023 at 12:10:19 a.m.

4431 F Street SE Camera
June 9, 2023 3:01:36 a.m.

*See id.*  The Government then alleges that, at approximately 2:21 a.m., multiple "subjects" and the Victims return to the 4400 block of F Street SE.  *Id.* at 13.  At approximately 2:33 a.m., prior to the armed carjacking and kidnapping of the Victims, Defendants Henderson, Mundaray, and M. Jackson, and Marquise Jackson (the twin brother of Defendant Jackson) begin stealing multiple items from Victim-1's Mercedes SUV "while it was parked and unoccupied at that same location." *Id.*  Specifically, Defendants Henderson, Mundaray, and M. Jackson approach the rear of the SUV and begin searching the SUV via the passenger-side rear door at approximately 2:33 a.m.  *Id.* Marquise Jackson then joined the group as Defendant Henderson continued to search the vehicle. *Id.*  During this time, Defendant Mundaray and Marquise Jackson stand near the rear of the SUV and act as lookouts.  *Id.*  Eventually, Defendant Henderson gains access to the SUV, and Defendant Mundaray and Marquise Jackson assist Defendant Henderson at the passenger-side rear door.  *Id.* Defendant Mundaray subsequently appears on video with a black backpack, and Defendant Henderson is seen inside the vehicle, utilizing a flashlight to search the driver and front passenger

4

seats. *Id.* At approximately 2:36 a.m., Defendants Mundaray, Henderson, and M. Jackson, and Marquise Jackson all leave the vehicle, with Defendant Mundaray wearing the black backpack and Defendant Henderson carrying a black bag. *Id.* At approximately 2:50 a.m., Defendant Mundaray is seen tucking a "black, L-Shaped object, that appears to be a firearm, into his front waistband." *Id.* at 14.

Of relevance here, Defendant Green served as a lookout while his co-defendants were entering and stealing multiple items from the Mercedes SUV. *Id.* The Government alleges that when Defendants Mundaray, Henderson, and M. Jackson first approached the SUV, Defendant Mundaray "waved multiple times" to Defendant Green to "signal that other persons should stay away and move away from his location." *Id.* Defendant, in turn, responded by "turning and waiving other persons in the vicinity away and back from the road, sidewalk, and grass hill area overlooking the street" where the SUV was located. *Id.*



*MUNDARAY, HENDERSON, and MARQUETTE JACKSON at the Mercedes SUV (circled in yellow) GREEN circled in red*



*MUNDARAY signaling to move away*





*GREEN responds by moving other persons away from F Street SE*

*See id.* at 15–16. The Government then recounts the armed carjacking and kidnapping of the Victims. At approximately 3:43 a.m., eleven subjects are seen on video surveillance footage "committing an armed robbery, carjacking, and kidnapping of [the Victims] as the Victims approached the [] SUV" located in the 4400 block of F Street SE. *Id.* at 16. According to the Government, Defendant Green committed the following actions between 3:44 a.m. and 3:46 a.m.: (1) Defendant is seen on camera walking from the side of 4431 F Street SE; (2) Defendant walks past an unknown individual, toward a witness and subsequently grabs the witness's arm and pulls him back; (3) Defendant speaks with the witness as the witness turns his head toward the Mercedes SUV; (4) Defendant, the witness, and the unknown individual walk toward the side of 4431 F Street SE, toward the SUV, before they are out of view of the camera; (5) Defendant is visible on camera when Victim-1 "has already been forced into the rear, driver side passenger seat and

6

Case 1:23-cr-00292-CKK   Document 61   Filed 12/14/23   Page 7 of 19

Victim-2 has been forced into the rear tailgate area" of the SUV; (6) Defendant passes Defendant Terrell, who is holding a clear bag that was retrieved from underneath the SUV; (7) Defendant approaches the SUV and "assists with opening the driver-side door" while conversing with Defendant Mundaray; (8) Defendant Mundaray retrieves an item from his pocket and hands that item to Defendant before the driver-side door of the SUV is closed; (9) Defendant tucks "a black, L-Shaped object, that appears to be a firearm, into his front waistband" before walking back to 4431 F Street SE and walking out of view. *Id.* at 17–18.



**GREEN running toward the black Mercedes SUV during the offenses
(MUNDARAY visible in the driver's seat)**

*See id.* at 19. The Government claims that during this time a struggle ensued between Victim-1 and the subjects while the latter group "attempted to kidnap Victim-1, remove his clothing, and force him into the rear passenger area of the Mercedes SUV." *Id.* at 9. Similarly, Victim-2 was "stripped at gunpoint" and forced into the rear tailgate area of the SUV. *Id.* At approximately 4:39 a.m., the Mercedes SUV and a white Nissan Altima are seen on video surveillance footage

7

entering an apartment complex in Suitland, Maryland.[2]  *Id.*  The footage shows at least five individuals exiting those vehicles and moving toward an apartment that was subsequently burglarized, which law enforcement later determined was associated with Victim-1.  *Id.*  Then, at approximately 5:39 a.m., the Mercedes SUV is seen on video surveillance footage in front of Victim-1's apartment building in Waldorf, Maryland.  *Id.* at 10.  At least four subjects are seen exiting the SUV at "various times to aid in an armed robbery of [the] apartment."  *Id.*  During this time, Victim-3—the romantic partner of Victim-1—was robbed at gunpoint.  *Id.*  Four minutes later, at approximately 5:43 a.m., video surveillance footage shows at least three subjects "engag[ed] in a shootout with Victim-1," in which Victim-1 and Marquise Jackson are both "struck" and subsequently pronounced deceased after the "shootout."  *Id.*  At 6:45 a.m., the Nissan Altima is seen on video surveillance footage at the intersection of Kayak Avenue and Emo Street in Capitol Heights, Maryland, "just prior to the arrival" of first responders at 819 Kayak Street, where the Mercedes SUV was found to be on fire.  *Id.*  Finally, at approximately 8:02 a.m., the Metropolitan Police Department ("MPD") responded to the area of 4517 C Street SE, Washington, D.C., and, upon arrival, made contact with Victim-2, who was "naked except for one sock."  *Id.*  Victim-2 informed the officers that he was robbed of his clothing and shoes but managed to escape his captors, though with multiple lacerations across his body.  *Id.*  Victim-2 later informed officers that his captors "violently pistol-whipped [the] Victims," and demanded addresses from Victim-1.  *Id.* at 10–11.

Lastly, the Government explains that the investigation following June 9, 2023 indicated that the defendants and others who participated in the offenses are "close personal associates."  *Id.*

---

[2] The Government alleges that the Mercedes SUV contained Defendants Mundaray (who was driving), Henderson, Evans, as well as Marquise Jackson and Juvenile-1, while the Victims were being held inside. Gov't's Opp'n at 8.  The Nissan Altima contained Defendants Terrell (who was driving), M. Jackson, K. Jackson, and Harvey.  *Id.*

at 22; *id.* (explaining that connection was made after analyzing toll and cell phone location records, physical observations, social media records, and video captured by cameras). On August 31, 2023, law enforcement executed searches of twelve (12) premises and one (1) vehicle associated with the defendants and their associates in the District of Columbia and Maryland. *Id.* These searches resulted in law enforcement seizing numerous items, including but not limited to thirteen (13) firearms, firearm magazines and ammunition, clothing matching the appearance of items worn by various defendants and their associates during the offenses, and digital devices. *Id.* With respect to Defendant Green, law enforcement located and arrested him and a co-defendant at 4425 F Street SE, Washington, D.C. *Id.* However, the Government proffers that Defendant primarily resides at 4935 Collingtons Bounty Drive, Bowie, Maryland. *Id.* at 22–23; *see id.* at 23 (explaining that Defendant's cellphone device "repeatedly generated GPS data in or near the vicinity" of that residence); *id.* at 23 (explaining that law enforcement observed Defendant, Defendant Henderson, and a third individual leaving that residence on August 22, 2023). At that location, law enforcement recovered various items, including but not limited to: three Glock pistols (two of which were previously reported stolen); one AK-variant pistol; ammunition and firearm magazines; paperwork in Defendant's name located in a kitchen drawer; and the black and gray Nike hooded jacket matching the appearance of an item worn by Defendant during the offenses, which was located on a sofa next to the "loaded stolen MPD firearm." *Id.* at 25–26.

## II.     LEGAL STANDARD

A defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment of the order" with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b). The Court applies *de novo* review to the question and is "free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional

evidence and rely on its own reasons." *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011) (BAH) (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009) (PLF)). "The motion shall be determined promptly." 18 U.S.C. § 3145(b).

In our society, "liberty is the norm" and "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act permits pretrial detention in only "carefully defined circumstances." *United States v. Simpkins*, 826 F.2d 94, 95–96 (D.C. Cir. 1987). A detention hearing must be held only if a case involves any of an enumerated set of offenses, including a "crime of violence" or a felony that involves the use of a dangerous weapon, 18 U.S.C. § 3142(f)(1)(A), or if the defendant poses a serious risk of flight or of trying to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B).

The question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). In determining whether a defendant should be detained pending trial, the Court must consider "the available information" concerning four enumerated factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure

the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)). That standard requires the Government to establish that the defendant "poses a concrete, prospective threat to public safety" that cannot be sufficiently mitigated by release conditions. *Id.* at 1280; *see also Salerno*, 481 U.S. at 751 (requiring the Government to "prove[ ] by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community"). "Detention cannot be based on a finding that defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise[,] the scope of detention would extend beyond the limits set by Congress." *Munchel*, 991 F.3d at 1283.

### III. DISCUSSION

The Court concludes that the evidence presented by the Government in its briefing requires Defendant Green's detention pending trial.

**A. Legal Principles**

As a threshold matter, the Court must address the proper standard to apply at this stage of proceedings. As explained above, Defendant has appealed his detention order pursuant to 18 U.S.C. § 3145(b). Such an appeal is subject to *de novo* review, in which the Court must engage in a searching, "factbound inquiry" to determine danger to the community and/or risk of flight. *United States v. Sabol*, 534 F. Supp. 3d 58, 69 (D.D.C. 2021) (EGS) (citing *Munchel*, 991 F.3d at 1283) (cleaned up).

In determining whether Defendant is a danger to the community or a flight risk, the Court considers the Section 3142(g) factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant;

11

and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g).

The Court shall consider these factors based upon the present record without holding an additional hearing. *See Sheffield*, 799 F. Supp. 2d at 20 (permitting district court to use in its analysis the evidence relied on by the magistrate judge); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 33–34 (D.D.C. 2005) (PLF) (taking into consideration the indictment, "the briefs and other papers submitted by the parties, the proceedings before [the magistrate judge], the [magistrate's] findings of fact and conclusions of law, and the evidence and proffers before [the court]"). Based on the current record, the Court concludes that clear and convincing evidence supports a finding that no condition or combination of conditions will "reasonably assure" the "safety of any other person and the community" or flight in advance of trial. 18 U.S.C. § 3142(e)(1). Accordingly, the Court orders that Defendant shall remain detained pending trial. *See id.*

**B. Nature and Circumstances of the Offense Charged**

Turning to the Section 3142(g) factors, the Court first considers the "nature and circumstances of the offense charged" including whether the offense is a "crime of violence" or involved a firearm. 18 U.S.C. § 3142(g)(1). Under the Bail Reform Act, a "crime of violence" includes "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another," and "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property or another may be used in the course of committing the offense." *Id.* § 3156(a)(4)(A)–(B).

Here, the Government notes that the charge against Defendant relates to his conduct in connection with the armed carjacking and kidnapping of the Victims on June 9, 2023. Gov't's

Opp'n at 7.  Specifically, the other defendants in this case "threatened the Victims with firearms, took Victim-1's vehicle [(the Mercedes SUV)], clothing and other belongings from the Victims, and proceeded to commit a burglary and armed home invasion of two residences associated with Victim-1 in Maryland." *Id.*  As for Defendant Green, the Government emphasizes that he assisted the other defendants in perpetrating these crimes by serving as a lookout, speaking with potential witnesses, and retrieving a firearm from Defendant Mundaray while the Victims were being forcibly placed inside the SUV.  *Id.* at 14, 17–18.

The Government's specific allegations against Defendant are grave and indicate Defendant's willingness to assist—in any way he can—in serious crimes of violence.  Multiple images depict Defendant at the scene of the initial crime (at the 4400 block of F Street SE), serving as a lookout and either "waving other persons in the vicinity away," Gov't's Opp'n at 14, or speaking with a witness while the Victims are actively being kidnapped, *id.* at 17–18.  Furthermore, video surveillance footage shows Defendant retrieving a firearm from Defendant Mundaray, a fact that Defendant does not seriously contest in his motion.  *See* Mot. at 3–4 ("Video conference . . . depict [Defendant Green] receiving what appears to be a firearm from one of his co-defendants[, but] [i]t is unclear whether the firearm was employed to facilitate the kidnapping and robbery or was removed from the victim's vehicle by the co-defendant and given to [Defendant]."). In all, Defendant Green's alleged conduct "demonstrates a flagrant disregard for the rule of law" and for the safety of others and the community.  *United States v. Munchel*, 521 F. Supp. 3d 54, 61 (D.D.C. 2021) (RCL), *remanded*, 991 F.3d 1273 (D.C. Cir. 2021).

Moreover, the charged offense carries significant potential penalties for Defendant.  If convicted of Count Nine, Defendant would face a sentencing guidelines range of at least 63 to 78 months of imprisonment (i.e., approximately five to seven years), and a statutory maximum of

fifteen (15) years of imprisonment. Gov't's Opp'n at 4. Accordingly, the nature and circumstances of the crimes charged, as well as the heavy sentence to which Defendant is subject if convicted, militate heavily against pretrial release. *See United States v. Mercedes*, 254 F.3d 433, 437 (2d Cir. 2001) (noting nature of the crime—conspiracy to commit armed robbery of a drug-dealer—weighs heavily against release)

### C. Weight of the Evidence

The weight of the evidence against Defendant also favors continued pretrial detention. The Government presents multiple still images extracted from video surveillance footage depicting Defendant assisting his co-defendants in committing an armed carjacking and kidnapping of the Victims by serving as the lookout and handling potential witnesses. Gov't's Opp'n at 15–17, 19. Furthermore, Defendant is seen going toward the Mercedes SUV to converse with Defendant Mundaray and retrieve a firearm, while the Victims are simultaneously being forcibly held in that same vehicle. *Id.* at 19, 21.

Law enforcement also identified social media accounts used by Defendant and his associates, including other defendants in this case. *Id.* at 26. Images from social media depict Defendant socializing with a group of individuals, including Defendants M. Jackson, Terrell, and Henderson. *Id.* Notably, these photographs were published online in August 2023, approximately one month after the offenses involving the Victims. *Id.* Similarly, the investigation following June 9, 2023 revealed connections between Defendant's alleged telephone number and telephone numbers allegedly used by Defendants Henderson and Terrell, and "other subjects and witnesses of the offenses." *Id.* at 22. Finally, during the search of the 4935 Collingtons Bounty Drive residence, law enforcement recovered paperwork in Defendant's name in a kitchen drawer, as well as a Nike jacket matching the appearance of the jacket worn by Defendant on June 9, 2023. *Id.* at

26, 27. In all, the Government argues this evidence demonstrates Defendant's close relationship with his co-defendants, as well as his willingness to assist his associates with "such crimes as he did on June 9, 2023." *Id.* at 27.

Defendant, on the other hand, maintains that while he "may have witnessed these events," there is "no evidence that he discharged or brandished the firearm," but rather the evidence "establishes at best that once in possession of the item he simply walked away." Mot. at 4. Defendant also notes that he is not charged with Counts One, Two, or Three, unlike his co-defendants, and therefore his "position is clearly distinguishable" from the other defendants in this case. *Id.* Finally, with respect to the law enforcement searches in August 2023, Defendant states that he is "not the leaseholder" of either location, he has not used either address as his residence, and none of the firearms recovered during these searches "were recovered from [his] person." *Id.* at 5.

The Court disagrees with Defendant's suggestion that the evidence indicates that he had little to no involvement in the charged offenses. The Government has provided compelling evidence that Defendant knowingly and intentionally assisted his co-defendants on June 9, 2023. *See generally* Gov't's Opp'n. First, images from video surveillance footage depict Defendant serving as a lookout and "waving other persons in the vicinity away" while some of his co-defendants break into the Mercedes SUV and subsequently steal items located therein. *Id.* at 14–15. Additional video surveillance footage shows Defendant dealing with a potential witness while the Victims are actively being forced into the Mercedes SUV. *Id.* at 17–18. The footage then shows Defendant approaching the SUV to communicate with Defendant Mundaray, again while the Victims are being forcibly held inside, and retrieve a firearm from Defendant Mundaray before walking away from that scene. *Id.* at 18–19. Regardless of the reasons why Defendant retrieved

the firearm from Defendant Mundaray and walked out of view of the camera, Defendant still actively assisted in the crimes committed on June 9, 2023. Finally, while Defendant contends that he does not reside at the 4935 Collingtons Bounty Drive residence, Mot. at 5, the investigation and the evidence recovered at that location nonetheless demonstrates his close association with the residence and his co-defendants, *see* Gov't's Opp'n at 26 (a "folder of paperwork in [Defendant's] name in a kitchen drawer"); *id.* at 27 (finding Defendant's "black and gray Nike hooded jacket that he wore during the offenses" at the residence); *id.* at 23 (Defendant's alleged cellular device "repeatedly generated GPS data in or near" the vicinity of the residence); *id.* at 23 (Defendant seen with Defendant Henderson leaving the residence in August 2023).

Given the evidence to date, including the multiple images of Defendant at the scene of the crime, this factor weighs in favor of detention. *See United States v. Brockhoff*, 590 F. Supp. 3d 295, 304 (D.D.C. 2022) (CKK).

### D. History and Characteristics of the Defendant

Under the third Section 3142(g) factor, the Court must consider a defendant's "history and characteristics," including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3).

Admittedly, Defendant's lack of a serious criminal history weighs against pretrial detention.[3] Defendant also appears to have family and community ties in the area. *See* Mot. at 5

---

[3] Defendant's Pretrial Services Report states that Defendant has one prior arrest.

(stating Defendant is a life-long resident of the District of Columbia). His mother and sister also both live in the area. *Id.* at 6.

However, according to the Government, Defendant's characteristics demonstrate his eagerness and willingness to assist the other defendants in this case. *See* Gov't's Opp'n at 26–27. The Government emphasizes that Defendant was seen, on multiple occasions, interacting with various co-defendants, specifically Defendants M. Jackson, Terrell, and Henderson, in August 2023. *Id.* In addition, the fact that Defendant's Nike jacket, which was worn by him during the offenses, was recovered by law enforcement "right next to a loaded Glock pistol that was previously reported stolen by MPD" only further demonstrates that Defendant's "criminal conduct on June 9, 2023 was not an aberration." *Id.* at 27. Rather, Defendant is a "close associate of multiple co-defendants, is familiar with their activities, and indeed has demonstrated the will and means to further assist his associates with such crimes as he did on June 9, 2023." *Id.*

In all, the Court finds that this factor stands in equipoise for Defendant.

### E. The Nature and Seriousness of the Danger Posed by Defendant's Release

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4).

Defendant argues that his proposed conditions of release would be sufficient to not imperil the safety of any other person or the community. Mot. at 6. Specifically, Defendant proposes that he be released on the condition that he resides with his mother and sister in the District of Columbia.[4] *Id.* Defendant further consents to electronic monitoring and substance abuse testing,

---

[4] Defendant also states that six other individuals, who were "screened and approved by pretrial services," would also assist in assuring his compliance with any conditions of release. Mot. at 6–7. Defendant does not explain the extent of his relationships with these individuals. *Id.* at 7.

17

*id.* at 7–8, and agrees to any condition that would prevent him from having contact with any witness or any other defendant in this case, *id.* at 8.

However, as noted above, the Government has provided strong evidence indicating that Defendant not only knowingly and intentionally served, at a minimum, as a lookout during the commission of an armed carjacking and kidnapping of two victims by his associates, but he obtained access to a firearm during the commission of these crimes and maintained access to firearms following June 9, 2023. *See generally* Gov't's Opp'n. Furthermore, the significant statutory penalties Defendant faces provide him with a strong incentive to flee. Overall, the Court's concerns regarding the safety of the community and Defendant's risk of flight are not alleviated. Therefore, this factor also weighs in favor of detention.

\* \* \*

All in all, the Court finds that no set of conditions can address the threat of danger Defendant poses to the community in the District of Columbia or mitigate his risk of flight. Notably, Defendant's Pretrial Services Report states: "No condition or combination of conditions can reasonably assure the defendant's appearance or safety to the community." The Government has shown that Defendant has a strong incentive to flee given the seriousness of the charges, the apparent weight of the evidence, and the statutory penalties he is facing. Therefore, the Court concludes that the Section 3142 factors require pretrial detention.

## IV.   CONCLUSION

The record as a whole establishes, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community or Defendant's presence at trial if he was released pending trial. 18 U.S.C.

§ 3142(e)(1). As such, the Court **DENIES** Defendant's [54] Motion for Bond Review. An appropriate order accompanies this memorandum opinion.

**Dated:** December 14, 2023

>                                    /s/
>                                    COLLEEN KOLLAR-KOTELLY
>                                    United States District Judge